UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————X

YASMEEN MITCHELL,

                Plaintiff,                    CV-05-4957 (SJF)(WDW)

   -against-

                                   **OPINION & ORDER**

COUNTY OF NASSAU,
NASSAU COUNTY POLICE DEPARTMENT,
CABLEVISION SYSTEMS CORPORATION,
CABLEVISION SYSTEMS NEW YORK CITY
CORPORATION, DETECTIVE CHRISTOPHER J.
FERRO, in his individual and official capacities,
TONY VENTURELLA, in his individual and official
capacities, "JOHN DOE," in his individual and
official capacities, and JEFF EISEMAN, in his
individual and official capacities,

                Defendants.

————————————————————————X

FEUERSTEIN, J.

     On October 24, 2005, plaintiff Yasmeen Mitchell (plaintiff) commenced this action

against the County of Nassau, Nassau County Police Department and Detective Christopher J.

Ferro (collectively, the County defendants) and Cablevision Systems Corporation, Cablevision

Systems New York City Corporation, Tony Venturella, "John Doe" and Jeff Eiseman

(collectively, the Cablevision defendants), pursuant to, *inter alia*, 18 U.S.C. §§1983, 1985 and

1986, alleging claims for malicious prosecution, false arrest, abuse of process, defamation and

negligence. The Cablevision defendants now move pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure to dismiss the complaint as against them. For the reasons stated herein,

the Cablevision defendants' motion is granted in part and denied in part.

-1-

I.     Background

    A.     Factual Background[1]

    Plaintiff is an African American female who, at all relevant times, resided in apartment

number B1 in an apartment complex located at 145 Terrace Avenue, Hempstead, New York (the

apartment complex). (Amended Complaint [Compl.], ¶¶12, 20, 89). According to plaintiff, the

apartment complex houses mostly minority persons with low incomes. (Compl., ¶ 93).

    Detective Christopher Ferro (Ferro) was, at all relevant times, a detective employed by

the Nassau County Police Department (the NCPD), Third Squad. (Compl. ¶ 16). Cablevision

Systems Corporation and/or Cablevision Systems New York City Corporation (collectively,

Cablevision) are telecommunications and entertainment companies which provide, *inter alia*,

cable television service and support. (Compl., ¶ 15). Tony Venturella (Venturella) was, at all

relevant times, employed by Cablevision as a security system administrator. (Compl., ¶ 17). Jeff

Eiseman (Eiseman) was, at all relevant times, employed by Cablevision as director of security for

cable and communications system security. (Compl., ¶ 18). The "John Doe" defendant was, at

all relevant times, employed by Cablevision as a customer service representative/technician.

(Compl., ¶ 19).

    On or about October 3, 2003, plaintiff contracted with Cablevision for cable television

services to be provided to her apartment. (Compl., ¶ 20). On that same date, Cablevision sent an

employee to plaintiff's apartment to install cable television service and to provide plaintiff with a

_____

    [1] As is required on a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure, the factual allegations in the complaint, though disputed by defendants, are accepted
to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor
of plaintiffs. They do not constitute findings of fact by this court.

cable television receiver, remote control and wire. (Compl., ¶¶ 21-22). The cable television wire connected plaintiff's receiver and television to a main junction box installed by Cablevision in the hallway of the apartment complex[2]. (Compl., ¶¶ 23, 56). According to plaintiff, the junction box was owned, operated, controlled and maintained by Cablevision. (Compl., ¶ 24). Plaintiff alleges that the junction box was, at all relevant times, "wide open" and easily accessed by anyone. (Compl., ¶¶ 74-78).

In or around December 2003, plaintiff contacted Cablevision by telephone to terminate the cable services being provided to her. (Compl., ¶ 25). According to plaintiff, Cablevision shut off plaintiff's cable service remotely and did not go to plaintiff's apartment or the apartment complex. (Compl., ¶ 26). Plaintiff alleges that the cable television signal provided to her apartment ceased immediately after she notified Cablevision that she wanted her cable services disconnected and she could not view any cable television channels or programs thereafter. (Compl., ¶¶ 28-29). Cablevision did not send anyone to plaintiff's apartment to retrieve the receiver or remote control provided by it. (Compl., ¶ 27).

In or around January 2004, Cablevision sent plaintiff a bill for approximately five hundred dollars ($500.00) for the cost of the receiver and remote control that plaintiff did not return. (Compl., ¶¶ 30-31). After plaintiff contacted Cablevision, she was advised that she had to return the receiver and remote control in order to avoid having to pay the bill. (Compl., ¶ 32). On or about January 9, 2004, plaintiff returned the receiver and remote control to a local

---

[2] According to plaintiff, the receiver provided to a customer when they order cable service from Cablevision connects to the jack or outlet in the junction box assigned to that customer's particular apartment. (Compl., ¶¶ 56-57). Plaintiff alleges that Cablevision gets a return signal from the junction box which allows it to determine which apartment's assigned jack or outlet is receiving a cable signal. (Compl., ¶¶ 58-62).

Cablevision station. (Compl., ¶ 33). Sometime thereafter, plaintiff received additional bills from Cablevision indicating that she owed payments for services she received prior to returning the receiver in the amount of ninety-one dollars ($91.00). (Compl., ¶ 34). Plaintiff acknowledged owing money to Cablevision and started to make small payments to Cablevision to satisfy her debt. (Compl. ¶¶ 35, 97).

In or around April 2004, plaintiff received a letter from Eiseman, dated April 16, 2004, stating, in relevant part, as follows: "During a routine audit of our cable system, we found an apparent unauthorized connection to your home. We have therefore, removed the connection from our cable system. Please be aware that theft of cable service is a violation of both Federal and State law." (Compl., ¶ 36). According to plaintiff, she did not respond to Eiseman's letter because she believed that it had been sent in error. (Compl., ¶ 37). Plaintiff alleges that Eiseman and Cablevision failed to investigate whether there was an unauthorized connection going to her apartment or to disconnect any unauthorized connection to her apartment. (Compl., ¶¶ 38-40).

In or around May 2004[3], plaintiff received another letter from Eiseman, dated May 20, 2004, stating, in relevant part, as follows: "On April 15th 2004 we identified and removed an unauthorized connection from our cable system to your home. You were notified via our letter dated April 20th 2004 [sic]. A return visit on May 18, 2004 once again identified an unauthorized connection to our cable system. As previously stated, theft of cable service is a violation of Federal and State law, punishable by severe monetary sanctions and a possible prison sentence. * * * Please understand that we will revisit this connection and any future violations will result in

---

[3] Although the Amended Complaint indicates that the letter was sent in "May 2005," when read in conjunction with the rest of the paragraph and with the subsequent paragraph, this appears to be an error.

additional legal action." (Compl., ¶¶ 41-42). Plaintiff alleges that Eiseman and Cablevision again failed to investigate whether there was an unauthorized connection going to her apartment or to disconnect any unauthorized connection to her apartment. (Compl., ¶¶ 43-44).

On or about June 1, 2004, plaintiff called Cablevision and spoke to "John Doe" about the accusations made in the letters. (Compl., ¶¶ 45-46). According to plaintiff, she advised "John Doe" that she was not stealing cable services, that she was unaware that she was getting a cable signal in her apartment, that she did not understand how she was receiving cable services, and that she had not received cable service since December 2003. (Compl., ¶ 47). Plaintiff alleges that "John Doe" advised her that Cablevision had determined that she had been receiving an unauthorized signal from the main junction box located in the apartment complex.[4] (Compl., ¶ 48). Plaintiff further alleges that she instructed "John Doe" to come to her apartment and disconnect the alleged unauthorized service and she advised him that the main junction box in the apartment complex was "wide open" and that he should inspect it and put a lock on it. (Compl., ¶¶ 49, 80). Plaintiff alleges that "John Doe" informed her that Cablevision would send someone to check the main junction box and to disconnect any connection she was receiving, but did not indicate a date or time when a technician would come. (Compl., ¶ 50). Plaintiff further alleges that "John Doe" and Cablevision never sent anyone to check, inspect or secure the junction box or to disconnect any connections to her apartment. (Compl., ¶¶ 51-54, 71-73). According to plaintiff, she never heard from Cablevision again after her conversation with "John

_____

[4] According to plaintiff, anyone who can gain access to the main junction box can get a cable signal by simply connecting a wire to any available jack or outlet and running the wire directly to their own apartment. (Compl., ¶¶ 63-64, 67-69). Therefore, according to plaintiff, Cablevision cannot discern from a remote location which apartment is receiving an unauthorized signal. (Compl., ¶¶ 63, 65-66, 70).

Doe." (Compl., ¶¶ 55, 87).

On or about July 1, 2004, Venturella filed "a bulk of criminal complaints" with the NCPD alleging theft of services against several tenants and "other minority persons" of the apartment complex, including plaintiff. (Compl., ¶¶ 88-89). Plaintiff alleges that before filing the criminal complaints, Venturella and Cablevision never visited her apartment, or any of the other apartments to which it was claimed that the unauthorized cable service was being provided, to verify whether she, or the occupants of the other apartments about which criminal complaints were filed, were actually the sources of the unauthorized connections. (Compl., ¶¶ 90-91).

On October 24, 2004, plaintiff was arrested and charged with theft of services (N.Y. Penal Law § 165.15[4]) as a result of the criminal complaint lodged against her by Venturella and/or Cablevision. (Compl. ¶ 92)[5].

According to plaintiff, Cablevision has a significant and reoccurring "'theft of service' problem" at the apartment complex. (Compl., ¶¶ 82-83). Plaintiff alleges that Cablevision was aware that the apartment complex housed mostly minority persons with low incomes, such as plaintiff. (Compl. ¶ 93). Plaintiff alleges that "other tenants, residents, and/or other minority persons" at the apartment complex have been accused of, and arrested for, theft of services as a results of reports Cablevision made to the police and that Cablevision frequently accuses and files criminal complaints against innocent minority persons at the apartment complex for theft of services without adequate investigation. (Compl., ¶¶ 83, 85-86, 95). According to plaintiff, the Cablevision defendants do not subject similarly situated non-minority persons to the filing of

---

[5] The parties concede that the criminal case against plaintiff pending in Nassau County District Court, People v. Mitchell, docket no. 2004NA022671, was dismissed on February 2, 2007 at the close of the People's case.

unsubstantiated criminal complaints. (Compl. ¶¶ 96, 98A[6]).

In addition, plaintiff alleges that Cablevision maliciously accused her of theft of services in order to collect the outstanding ninety-one dollar ($91.00) balance due to them from her and to collect additional payments from her to which they were not entitled. (Compl., ¶ 98). Plaintiff alleges that Cablevision routinely subjects minority persons to wrongful criminal process pursuant to its goal of collecting outstanding balances and other monies to which it is not entitled. (Compl., ¶ 99).

B.     Procedural History

On October 24, 2005, plaintiff filed this civil rights action against the County defendants and the Cablevision defendants pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, alleging malicious prosecution, false arrest, abuse of process, defamation and negligence. On May 2, 2006, plaintiff filed an amended complaint against, *inter alia*, the Cablevision defendants alleging, among other things, (1) conspiracy to deprive plaintiff of equal protection of the law and due process in violation of 42 U.S.C. § 1985 (fourth cause of action); (2) breach of duty to prevent the commission of the civil rights violations perpetrated against plaintiff in violation of 42 U.S.C. § 1986 (fifth cause of action); (3) false arrest and malicious prosecution (sixth cause of action); (4) abuse of process (seventh cause of action); (4) negligence (eighth cause of action); (5) vicarious liability on the part of Cablevision for the reckless, intentional and negligent acts of Eiseman, Venturella and "John Doe" (collectively, the individual Cablevision defendants) (tenth

---

[6] Plaintiff erroneously numbers two paragraphs 98 and two paragraphs 99. Accordingly, the second paragraphs are designated herein as 98A and 99A, respectively.

cause of action); (6) defamation *per se* (twelfth cause of action); and (7) respondeat superior liability on the part of Cablevision for the negligent hiring, supervision and retention of the individual Cablevision defendants (thirteenth cause of action). Plaintiff seeks, *inter alia*, compensatory and punitive damages, injunctive relief, a declaratory judgment and attorney's fees.

The Cablevision defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint as against them for failure to state a claim.

II.     Discussion

    A.     Standard of Review

A motion made pursuant to Rule 12(b)(6) should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003) (internal quotations and citations omitted). In deciding the motion, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); New v. Ashcroft, 293 F.Supp.2d 256, 257 (E.D.N.Y. 2003). The court's task "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt, 340 F.3d at 101 (internal quotations and citations omitted). The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims. See, New, 293 F.Supp.2d at 257 (citing Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 [2d Cir. 1995]). The Court must limit itself to the facts alleged in the

complaint, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit. See, Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); Spencer Trask Software and Information Services. LLC v. RPost Intern. Ltd., No. 02 Civ. 1276, 2003 WL 169801, at * 4 (S.D.N.Y. Jan. 24, 2003).

### B.  Section 1985 and 1986 Claims

In her fourth cause of action, plaintiff alleges that the Cablevision defendants conspired with the County defendants to deprive her of (1) equal protection of the law by unlawfully stopping and accusing, falsely detaining and imprisoning and wrongfully arresting her without any legal justification or basis; and (2) her due process rights by searching, seizing and charging her with criminal acts without probable cause or investigation. (Compl. ¶¶ 166-180). Specifically, with respect to the individual Cablevision defendants, plaintiff alleges, *inter alia*, that they knowingly filed false criminal complaints and conspired to violate the civil rights of innocent minority people by using the NCPD as a collection agency. (Compl. ¶¶ 169-172).

In her fifth cause of action, plaintiff alleges, *inter alia*, that the individual Cablevision defendants breached their duty under section 1986 to prevent the commission of the civil rights violations perpetrated against plaintiff in violation of sections 1983 and 1985; that the Cablevision defendants knew or should have known that the false criminal complaint, detainment, assault, arrest, prosecution and imprisonment of plaintiff violated her constitutional rights; and that the Cablevision defendants had the knowledge and ability to prevent the assault,

arrest, detainment, prosecution, imprisonment, and charging of plaintiff, yet neglected to prevent such violations from occurring or to intervene to protect or aid plaintiff when such violations occurred. (Compl., ¶¶181-190).

       1.    Section 1985 Claim[7]

The Cablevision defendants contend that plaintiff's section 1985 claim fails because plaintiff does not allege that they engaged in any race-based discrimination against her or any overt acts in which they engaged in furtherance of the alleged conspiracy.

In order to state a claim under section 1985, a plaintiff must allege "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." See Palmieri v. Lynch, 392 F.3d 73, 86 (2d Cir. 2004), cert. denied, 126 S.Ct. 424, 163 L.Ed.2d 323 (2005) (citing Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999)); see also Brown, 221 F.3d at 341. Plaintiff identifies herself in the amended complaint as African American and alleges that Cablevision was aware that the apartment complex housed mostly minority people and that Cablevision frequently accused minority tenants of her apartment complex with theft of services and subjected them to wrongful criminal process but did not subject similarly situated non-minority people to the same conduct. (Compl., ¶¶12, 83, 85-86, 93, 95-96, 98A-99). Although the mere assertion of racial motivation, without more, is insufficient to state a

---

[7] The elements of a claim under § 1985(3), the only relevant provision here, are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, ...; (3) an act in furtherance of the conspiracy; (4) whereby a person is ... deprived of any right of a citizen of the United States." Brown v. City of Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000); Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087-1088 (2d Cir. 1993) (accord).

conspiracy claim under section 1985, Posr v. Court Officer Shield No. 207, 180 F.3d 409, 419 (2d Cir. 1999); see also Yusuf v. Vassar College, 35 F.3d 709, 714 (2d Cir. 1994) (holding that the complaint must provide a factual basis for inferring a racial motivation for the act), plaintiff's allegations are sufficient, at the pleadings stage, to withstand dismissal. Cf. Posr, 180 F.3d at 419 (affirming dismissal of the plaintiff's section 1985 claim on the basis that the complaint failed to allege facts sufficient to support a conclusion of race-based animus were the plaintiff did not allege, *inter alia*, that the defendants improperly treated other African-Americans in ways similar to that in which they treated him); see also Wang v. Office of Professional Medical Conduct, Nos. 06-1092-CV and 06-1158-CV, 2007 WL 926838 (2d Cir. Mar. 28, 2007) (summary order) (vacating the dismissal of the plaintiff's section 1981 claim on the basis that although the plaintiff alleged no facts that would support a finding of discriminatory intent, he need not do so at the pleadings stage).

Many of the cases cited by the Cablevision defendants in purported support of their position that plaintiff's section 1985 claim should be dismissed involve motions for summary judgment and, thus, are inapposite. See, e.g. Thomas, 165 F.3d at 147; Herrmann v. Moore, 576 F.2d 453, 456-457 (2d Cir. 1978); Singh v. Federation of State Medical Boards of the United States, Inc., No. 95 Civ. 10725, 1997 WL 153819, at * 2 (S.D.N.Y. Apr. 2, 1997). In addition, most of the cases cited by the Cablevision defendants in purported support of their position were decided prior to the Supreme Court's decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which held that, with limited exceptions not applicable here, the simplified pleading standard set forth in Rule 8(a) of the Federal Rules of Civil

-11-

Procedure applies to all civil actions.[8] Id. at 513, 122 S.Ct. 992. Thus, the heightened pleading standard which previously applied to conspiracy claims is arguably no longer applicable. Plaintiff's allegations against the Cablevision defendants meet the simplified pleading standard of Rule 8(a), insofar as they give the Cablevision defendants fair notice of what plaintiff's claims are and the grounds upon which they rest. See Swierkiewicz, 534 U.S. at 512, 122 S.Ct. 992. Following discovery, the Cablevision defendants may file a motion for summary judgment challenging plaintiff's evidence, *inter alia*, of discriminatory intent.

2.    Section 1986 Claim[9]

The Cablevision defendants contend that since there is no viable section 1985 claim, plaintiff's section 1986 claim fails as a matter of law. In addition, the Cablevision defendants contend that plaintiff's section 1986 claim fails because she does not plead discrimination based on race or that any of the Cablevision defendants knew about the County defendant's subsequent investigation and prosecution of plaintiff.

---

[8] Although Baptiste v. New York City Transit Authority, No. 02 Civ. 6377, 2004 WL 626198, at * 6 (S.D.N.Y. Mar. 29, 2004) was decided after Swierkiewicz, 534 U.S. at 512, 122 S.Ct. 992, no mention was made of the Supreme Court's holding in that case. Accordingly, I find Baptiste unpersuasive. In any event, Baptiste also involved a motion for summary judgment and, therefore, is inapposite. In addition, Fisk v. Letterman, 401 F.Supp.2d 362 (S.D.N.Y. 2005), the only other post-Swierkiewicz opinion cited by plaintiff, involved a claim of 1983 conspiracy and, thus, is also inapposite.

[9] Section 1986 provides, in relevant part, that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, * * * for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented * * *."

A section 1986 claim must be predicated upon a valid section 1985 claim. Thomas, 165 F.3d at 147; see also Posr, 180 F.3d at 419 (holding that no section 1986 claim will lie where there is no valid section 1985 claim). Since I have denied the branch of the Cablevision defendants' motion seeking dismissal of plaintiff's section 1985 claim, a 1985 claim presently exists upon which plaintiff may base a section 1986 claim.

However, knowledge "of the wrongs conspired to be done" is a statutory prerequisite to an action under section 1986. Buck v. Board of Elections of City of New York, 536 F.2d 522, 524 (2d Cir. 1976); Platsky v. Kilpatrick, 780 F.Supp. 110, 113-114 (E.D.N.Y. 1991), aff'd, 7 F.3d 220 (2d Cir. 1993); Gollomp v. Spitzer, No. 1:06-CV-802, 2007 WL 433361, at * 6 (N.D.N.Y. Feb. 5, 2007). Although plaintiff alleges that Eiseman accused her of theft of services (Compl., ¶¶ 36-44), the amended complaint is bereft, *inter alia,* of any allegations that Eiseman accused other minority tenants of the complex of such conduct or failed to investigate accusations against other minority tenants; or knew of Cablevision's purported practice of accusing minority individuals of theft of services, of the racial composition of the apartment complex, or that other minority individuals were being subjected to allegedly wrongful criminal process. Accordingly, the branch of the Cablevision defendants' motion which seeks dismissal of the section 1986 claim against Eiseman is granted.

However, plaintiff's allegations in the amended complaint, *inter alia*, that Venturella subjected her, and other minority tenants of the apartment complex, to wrongful criminal process by filing criminal complaints with the County defendants, resulting in her arrest by the County defendants (Compl., ¶¶88-92), and that Cablevision's practice is to subject minority individuals, including plaintiff, to wrongful criminal process (Compl., ¶¶ 82-83, 93-98A), are sufficient, at

the pleadings stage, to state a claim under section 1986 against Venturella and Cablevision.

Moreover, plaintiff's allegations that she informed "John Doe" of her situation, i.e., that she was being wrongfully accused of theft of services by Cablevision, and that he failed to take any action once so informed are sufficient, at the pleadings stage, to state a claim under section 1986. See, e.g. Platsky, 780 F.Supp. at 114 (finding that the plaintiff's allegations that he apprised the defendant of the situation, and that he explained to her that he was arrested on a false complaint filed by another defendant and that this was just another example of the tactics of the hotel defendant's management, were sufficient to state a claim under section 1986). Accordingly, the branch of the Cablevision defendants' motion which seeks dismissal of plaintiff's section 1986 claim against Venturella, "John Doe" and Cablevision is denied. See, e.g. Thompson v. State of New York, 487 F.Supp. 212, 229 (N.D.N.Y. 1979) (finding that plaintiff stated a claim for relief under section 1986 where they stated a valid claim for relief under section 1985 and alleged that the defendants were aware of the conspiracy but did not attempt to prevent it).

### 3. Vicarious Liability

The Cablevision defendants contend that vicarious liability cannot be imposed upon Cablevision under section 1985 and 1986 because plaintiff has not alleged a primary violation of those statutes[10] or that Cablevision had a discriminatory policy that led directly to the alleged violations. In fact, according to the Cablevision defendants, plaintiff specifically alleges that the individual Cablevision defendants disregarded company policy, thereby preempting any vicarious liability. (Compl., ¶ 171).

---

[10] In light of my determination above, supra, it is unnecessary to consider this contention.

Assuming, without deciding, that plaintiff must allege a discriminatory policy in order to hold Cablevision liable under sections 1985 and 1986, see, e.g. Landesman v. City of New York, 501 F.Supp. 837, 841 (E.D.N.Y. 1980) (holding in the context of a section 1983 case that generally, vicarious liability is not a permissible basis for liability under the federal civil rights laws), the amended complaint sufficiently alleges the existence of such a policy. Although the Cablevision defendants focus on one paragraph in the amended complaint in which plaintiff alleges that the individual Cablevision defendants acted in disregard of "Cablevision's established practices" (Compl., ¶ 171), plaintiff takes that statement out of context. When read together with the preceding paragraph, it is clear that plaintiff is referring specifically to the "established practices, policies and procedures used [by Cablevision] to determine whether a specific customer is engaging in theft of cable service." (Compl., ¶ 170). Contrary to the Cablevision defendants' contention, throughout the amended complaint plaintiff alleges that Cablevision had a policy of discriminating against non-minority individuals by accusing them of, falsely reporting them for, and having them arrested for theft of services without adequate investigation. (Compl., ¶¶82-83, 93-99). Those allegations are sufficient, at the pleadings stage, to withstand dismissal of the section 1985 and 1986 claims against Cablevision.

### C. State Law Claims

#### 1. Malicious Prosecution Claim

The Cablevision defendants contend that plaintiff fails to state a claim for malicious prosecution because, *inter alia*, she does not sufficiently allege malice or that there was no

probable cause for her prosecution.[11] According to the Cablevision defendants, plaintiff's allegations that they filed the criminal complaint in order to collect payments from her and to use the criminal justice system as a collection agency (Compl., ¶¶ 205-206) are insufficient to state a claim of malice. In addition, the Cablevision defendants contend that plaintiff cannot establish that there was no probable cause to prosecute her in light of her admission that someone had tampered with the jack for her apartment in the main junction box (Compl., ¶ 69), since there is a presumption under New York Penal Law § 165.15(4) that when cable equipment has been tampered with, the resident is the one who did the tampering with the intent to avoid payment.[12]

"To establish a claim for malicious prosecution under New York law, the plaintiff must show (1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor."[13] Posr, 180 F.3d at

---

[11] Since the parties to this motion concede that the criminal proceedings against plaintiff have ultimately been dismissed, I will not address the Cablevision defendants' argument that plaintiff's malicious prosecution claim fails because she does not allege that the criminal proceeding terminated in her favor and deny plaintiff's application for a stay of discovery as moot. Plaintiff is granted leave to amend her complaint to replead her malicious prosecution claim in light of the dismissal of the criminal proceedings against her.

[12] On a motion to dismiss, a court may take judicial notice of public records, such as documents filed in another court, to establish the existence of the documents and the fact of such litigation, but not for the truth of the matters asserted therein. See Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006); Kramer v. Time Warner Inc., 937 F.2d 767, 773-774 (2d Cir. 1991). Therefore, to the extent that the Cablevision defendants rely on plaintiff's statement to the police, filed in the state court criminal proceeding, for the truth of the matters asserted therein, I have not considered such statement and disregard this branch of the Cablevision's defendant's argument in support of their motion to dismiss plaintiff's malicious prosecution claim.

[13] As noted above, I will not address the fourth element--termination of the criminal proceeding in the plaintiff's favor--on this motion.

417; see also Rounseville v. Zahl, 13 F.3d 625, 628 (2d Cir. 1994).

### a.      Initiation of Criminal Proceeding

The Cablevision defendants do not challenge this element of plaintiff's malicious

prosecution claim.  Nevertheless, since plaintiff does not allege that Eiseman or "John Doe"

participated in anyway with the commencement of the criminal prosecution against plaintiff,

plaintiff's malicious prosecution claim against those defendants is dismissed.  However, since

plaintiff alleges that Venturella intentionally and maliciously filed an unsubstantiated criminal

complaint and supporting deposition against plaintiff, in which he urged her arrest, the amended

complaint arguably satisfies the first element to state a malicious prosecution claim under New

York law.  See, e.g. Lupski v. County of Nassau, 32 A.D.3d 997, 822 N.Y.S.2d 112, 114 (2nd

Dept. 2006) (holding that in order for a civilian defendant to be considered to have initiated the

criminal proceeding, it must be shown that the defendant played an active role in the prosecution,

such as giving advice and encouragement or importuning the authorities to act).

### b.      Probable Cause

"In the context of a malicious prosecution claim, probable cause under New York law is

'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the

belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'"

Rounseville, 13 F.3d at 629-630 (citing Pandolfo v. U.A. Cable Systems of Watertown, 171

A.D.2d 1013, 568 N.Y.S.2d 981 (4th Dept. 1991)).  The relevant probable cause determination in

the context of a malicious prosecution claim is "whether there was probable cause to believe the

criminal proceeding could succeed and, hence, should be commenced." Mejia v. City of New York, 119 F.Supp.2d 232, 254 (S.D.N.Y. 2000). "[T]he existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the * * * arrest." Id.

In her amended complaint, plaintiff adequately alleges, *inter alia*, that she was prosecuted without probable cause (Compl., ¶¶ 191-197). Although the Cablevision defendants are correct that N.Y. Penal Law § 165.15(4) contains a presumption that when cable equipment has been tampered with, the resident is the one who did the tampering with the intent to avoid payment, that presumption is evidentiary and is rebuttable. See generally Cablevision Systems Development Co. v. Annasonic Electronic Supply, No. 83 Civ. 5159, 1984 WL 254932, at * 6 (E.D.N.Y. Oct. 22, 1984) (finding that the defendants had not offered any evidence to rebut the presumption contained in section 165.15(4)).

The two cases to which the Cablevision defendants cite in purported support of their contention that the malicious prosecution claims should be dismissed because there was probable cause for plaintiff's arrest and subsequent prosecution, involve motions for summary judgment and, thus, are inapposite. See, e.g. Plataniotis v. TWE-Advance/Newhouse Partnership, 270 A.D.2d 627, 628, 704 N.Y.S.2d 327, 329 (3d Dept. 2000); Pandolfo, 171 A.D.2d 1013, 568 N.Y.S.2d 981. At the pleadings stage, plaintiff's allegations of probable cause are sufficient to state a claim of malicious prosecution as against Venturella and Cablevision, notwithstanding that she may ultimately be required to present evidence sufficient to rebut the presumption in light of her admission that the main junction box in the apartment complex had been tampered with.

c.    Malice

"Showing malice under New York law in [a malicious prosecution] context 'does not require a plaintiff to prove that the defendant was motivated by spite or hatred, * * * [r]ather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" Rounseville, 13 F.3d at 630 (citing Nardelli v. Stamberg, 44 N.Y.2d 500, 502-503, 406 N.Y.S.2d 443, 377 N.E.2d 975 (1978)).  Generally, the issue of malice is a question of fact.  See Rounseville, 13 F.3d at 631.

Contrary to the contention of the Cablevision defendants, plaintiff's allegations, *inter alia*, that Venturella and Cablevision filed the criminal complaint in order to collect payments from her, including payments to which they were purportedly not entitled (Compl., ¶ 98), and to use the criminal justice system as a collection agency (Compl., ¶¶ 98-99, 205-206), as well as her allegation that Cablevision did not subject similarly situated non-minority people to the filing of unsubstantiated and inadequately investigated criminal complaints (Compl., ¶¶ 96-98A), raise an inference that those defendants acted with a wrong or improper motive and are, thus, sufficient at the pleadings stage to satisfy the malice element of a malicious prosecution claim.  Accordingly, the branch of the Cablevision defendants' motion which seeks dismissal of plaintiff's malicious prosecution claim against Venturella and Cablevision is denied.


2.    False Arrest Claim

The Cablevision defendants contend that plaintiff cannot state a false arrest claim against them because they are not police officers and did not arrest her and plaintiff does not allege that

they directed the County defendants to take her into custody or that they investigated or participated in her arrest in any way. Moreover, the Cablevision defendants contend that since New York Penal Law § 165.14(4) provided probable cause for plaintiff's arrest, her alleged confinement was "otherwise privileged" and, thus, a false arrest claim cannot be sustained.

To establish a false arrest claim under New York law, a plaintiff must demonstrate (1) that the defendant intentionally confined him or her; (2) that the plaintiff was aware of the confinement; (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged. See Shain v. Ellison, 273 F.3d 56, 67 (2d Cir. 2001); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

Under New York law, generally

> "a civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest * * *. Nor does identifying plaintiff as the perpetrator of a crime, signing the summons or testifying at trial give rise to tort liability."

Du Chateau v. Metro-North Commuter R. Co., 253 A.D.2d 128, 131, 688 N.Y.S.2d 12 (1st Dept. 1999). However, a claim of false arrest may lie "where a plaintiff can 'show that * * * defendants instigated his arrest, thereby making the police * * * agents in accomplishing their intent to confine the plaintiff." Weintraub v. Board of Educ. of City of New York, 423 F.Supp.2d 38, 56 (E.D.N.Y. 2006) (citing Carrington v. City of New York, 201 A.D.2d 525, 527, 607 N.Y.S.2d 721 (2d Dept. 1994)); see also Lowmack v. Eckerd Corp., 303 A.D.2d 998, 999, 757 N.Y.S.2d 406 (4th Dept. 2003)(holding that to sustain a claim for false arrest against a civilian complainant, a plaintiff must show that the defendant took an active role in the arrest of

the plaintiff, such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff).

Initially, since plaintiff does not allege that Eiseman or "John Doe" participated in any way with her arrest, provided any information to law enforcement officials or took any steps to effectuate her arrest, or even knew of her arrest, plaintiff fails to state a false arrest claim against those defendants. Accordingly, the branch of the Cablevision defendants' motion which seeks dismissal of the false arrest claim against Eiseman and "John Doe" is granted and that claim is dismissed as against those defendants.

With respect to Venturella, plaintiff additionally alleges that Venturella intentionally and maliciously filed an unsubstantiated criminal complaint against her without adequate investigation together with a supporting deposition in which he urged her arrest. (Compl., ¶¶ 89-91). Accordingly, at the pleadings stage, the amended complaint arguably states a claim for false arrest as against Venturella.

Again, the cases upon which the Cablevision defendants rely in purported support of their contention that plaintiff's false arrest claims against them should be dismissed involved motions for summary judgment and are, thus, inapposite. See, e.g. Cobb v. Willis, 208 A.D.2d 1155, 1156, 617 N.Y.S.2d 601 (3d Dept. 1994); Russ v. State Employees Federal Credit Union (SEFCU), 298 A.D.2d 791, 750 N.Y.S.2d 658 (3d Dept. 2002).

a.    "Otherwise Privileged"

"An arrest made on probable cause is privileged * * *." Shain, 273 F.3d at 67-68; see also Davis v. City of New York, 373 F.Supp.2d 322, 329 (S.D.N.Y. 2005) (holding that probable

cause to believe that the plaintiff committed a crime constitutes a privilege justifying the arrest and subsequent confinement). "Under New York law, probable cause to arrest is a complete defense to a claim of false arrest." Posr, 180 F.3d at 414. Probable cause to arrest exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).

The Cablevision defendants rely solely on the presumption created by N.Y. Penal Law § 165.15(4) in support of their contention that probable cause existed for plaintiff's arrest. However, as noted above, section 165.15(4) creates an evidentiary presumption that is rebuttable. At the pleadings stage, plaintiff's allegations of lack of probable cause are sufficient to state a claim of false arrest as against Venturella and Cablevision, notwithstanding that she may be required to present evidence sufficient to rebut the presumption created by N.Y. Penal Law § 165.15(4). Accordingly, the branch of the Cablevision defendants' motion which seeks dismissal of plaintiff's false arrest claims as against Venturella and Cablevision is denied.


3. Abuse of Process

The Cablevision defendants contend, *inter alia*, that plaintiff's abuse of process claim fails because she has not properly pleaded that they had an ulterior motive in initiating the criminal process by reporting her to the police. According to the Cablevision defendants, since there is no allegation in the amended complaint suggesting that they tried to coerce plaintiff into doing anything after the criminal complaint was filed, plaintiff cannot state a claim for abuse of

process. In addition, the Cablevision defendants contend that plaintiff's abuse of process claim fails as a matter of law since she does not allege special damages.

In order to establish a claim of malicious abuse of process under New York law, a plaintiff must demonstrate that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Shain, 273 F.3d at 68 (citing Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)). "The gist of the action for abuse of process lies in the improper use of process after it is issued. To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough." Webster v. City of New York, 333 F.Supp.2d 184, 208 (S.D.N.Y. 2004) (citing Dean v. Kochendorfer, 237 N.Y. 384, 390, 143 N.E. 229 (N.Y. 1924)).

Initially, the Cablevision defendants' contention that "the pursuit of a collateral objective must occur *after* the process is issued; the mere act of issuing process does not give rise to a claim [of abuse of process]," (emphasis in original) (Memorandum of Law in Support of Cablevision Defendants' Motion to Dismiss [Cablevision Mem.], p. 20), has been called into doubt by the New York Court of Appeals. See Parkin v. Cornell University, Inc., 78 N.Y.2d 523, 530, 577 N.Y.S.2d 227, 583 N.E.2d 939 (N.Y. 1991) (observing that it remains unclear "whether this language [from Dean] should be viewed as a strict and limiting definition of the tort or whether it is merely illustrative" and that "nothing in this Court's holdings would seem to preclude an abuse of process claim based on the issuance of the process itself"); see also Granato v. City of New York, No. 98-CV-667, 1999 WL 1129611, at * 7, n. 16 (E.D.N.Y. Oct. 18, 1999) (recognizing that the New York Court of Appeals has expressed doubt that such language in

Dean should be viewed as a limitation on the definition of the tort of abuse of process); Prosser & Keeton, The Law of Torts § 121 at 898 (5th ed. 1984) (stating that "a demand for collateral advantage that occurs before the issuance of process may be actionable, so long as process does in fact issue at the defendant's behest, and as a part of the attempted extortion). None of the cases upon which the Cablevision defendants rely make any reference to Parkin. See, e.g. Krebs v. United States, No. 98 Civ. 2590, 1999 WL 185263, at * 5 (S.D.N.Y. Mar. 31, 1999); Silver v. Kuehbeck, 05 Civ. 35, 2005 WL 2990642, at * 7 (S.D.N.Y. Nov. 7, 2005).

However, it is unnecessary to resolve this issue, since plaintiff's abuse of process claim fails as a matter of law for, *inter alia*, plaintiff's failure to plead special damages. See, e.g. Jacques v. DiMarzio, Inc., 216 F.Supp.2d 139, 142 (E.D.N.Y. 2002), aff'd, 386 F.3d 192 (2d Cir. 2004) (holding that a party must allege and prove actual or special damages in order to recover); Beezhold v. Allegiance Healthcare Corp., No. 99 Civ. 0299, 2000 WL 1092886, at * 3 (S.D.N.Y. Aug. 4, 2000) (accord); Board of Ed. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n, Inc. Local 1889 AFT AFL-CIO, 38 N.Y.2d 397, 405, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975) (accord). Accordingly, the branch of the Cablevision defendants' motion which seeks dismissal of plaintiff's abuse of process claim is granted and that claim is dismissed as against the Cablevision defendants. In addition, since plaintiff's abuse of process claim is facially deficient as a matter of law, it is dismissed *sua sponte* as against the County defendants as well.

### 4. Negligence Claim

The Cablevision defendants contend that plaintiff cannot state a negligence claim as a

matter of law because in New York, there is no cause of action for negligent prosecution or investigation. The Cablevision defendants further contend that, in any event, plaintiff does not allege that they owed a duty directly to her since she admittedly was not a customer of Cablevision at the time of the events of which she complains.

Plaintiff alleges, in essence, that she would not have been arrested or prosecuted if the Cablevision defendants had more carefully maintained their equipment and investigated her claim prior to filing a criminal complaint against her. As a matter of public policy, New York does not recognize a claim for negligent investigation and prosecution. See, e.g. Grennan v. Nassau County, No. 04-2158, 2007 WL 952067, at * 22 (E.D.N.Y. Mar. 29, 2007); Jenkins v. City of New York, No. 91 Civ. 3539, 1992 WL 147647, at * 8 (S.D.N.Y. Jun. 15, 1992); Coleman v. Corporate Loss Prevention Associates, Inc., 282 A.D.2d 703, 724 N.Y.S.2d 321, 322 (2d Dept. 2001). Plaintiff's creative attempt to describe her negligence claim as one for, *inter alia*, negligent maintenance of equipment and negligent hiring and supervision, cannot circumvent this public policy of the State of New York. See, e.g. Jenkins, 1992 WL 147647, at * 8 (dismissing plaintiff's negligence claims, which she described as, *inter alia*, negligent investigation, negligent training and negligent supervision, on the basis of New York's public policy prohibiting causes of action for negligent prosecution or investigation); Russ, 298 A.D.2d at 793, 750 N.Y.S.2d 658 (holding that a claim for negligent training in investigative procedures is akin to a claim for negligent investigation or prosecution, which is not actionable in New York).

Moreover, contrary to plaintiff's contention, the fact that she was still paying an outstanding debt owed to Cablevision for services previously rendered does not render her a

customer of Cablevision at the time of the events at issue. By plaintiff's own admission, she terminated her service contract with Cablevision as of December 2003, (Compl., ¶ 25), prior to any of the conduct of which she complains about the Cablevision defendants. Accordingly, the branch of the Cablevision defendants' motion which seeks dismissal of plaintiff's negligence claim is granted, and that claim is dismissed in its entirety.

### 5. Defamation Claim

Plaintiff voluntarily agrees to withdraw her defamation claim as against the Cablevision defendants. Accordingly, plaintiff's defamation claim is dismissed with prejudice as against the Cablevision defendants.

## III. Conclusion

For the reasons stated herein, the Cablevision defendants' motion is granted to the extent (1) that plaintiff's section 1986 claim against Eiseman is dismissed; (2) that plaintiff's malicious prosecution and false arrest claims against Eiseman and "John Doe" are dismissed; and (3) that plaintiff's abuse of process and negligence claims are dismissed in their entirety as against the Cablevision defendants, and the motion is otherwise denied. In addition, I *sua sponte* dismiss plaintiff's abuse of process claim as against the County defendants. Plaintiff is granted leave to amend her complaint to replead her malicious prosecution claim as against the remaining defendants. The parties are directed to appear in my courtroom at 1010 Federal Plaza, Central Islip, New York on **Wednesday, June 13, 2007 at 10:30 a.m.** for a settlement and/or scheduling

conference with authority or persons with authority to resolve this action. Further, the parties are directed to engage in good faith settlement negotiations prior to the conference.

SO ORDERED

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: May 24, 2007
      Central Islip, New York

Copies to:

Law Offices of
Frederick K. Brewington, Esq.
50 Clinton Street, Suite 501
Hempstead, New York 11550

Nassau County Attorney's Office
One West Street
Mineola, New York 11501

Akin Gump Strauss Hauer & Feld, LLP
590 Madison Avenue
New York, New York 10022